**FORM 104 (10/06)**

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Habbo G. Fokkena<br>United States Trustee, Region 12 | **DEFENDANTS**<br>Jon & Laurie Warren |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>James Snyder 210 Walnut Street, Room 793<br>Des Moines, Iowa 50309 (515) 284-4982 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor     ☒ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

---

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
[X] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

---

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR  Jon & Laurie Warren | | BANKRUPTCY CASE NO.  09-02144 |
| DISTRICT IN WHICH CASE IS PENDING  Southern District of Iowa | DIVISIONAL OFFICE  Davenport Division | NAME OF JUDGE  Lee M. Jackwig |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)  /s/ James L. Snyder  James L. Snyder  Assistant United States Trustee | | |
| DATE  July 8, 2009 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)  James L. Snyder | |

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-02144-lmj-7 |
| | ) | |
| Jon & Laurie Warren, | ) | Chapter 7 |
| | ) | |
| Debtor(s). | ) | |
| Habbo G. Fokkena, | ) | Adversary Proceeding No. |
| United State Trustee, Region 12 | ) | |
| vs. | ) | |
| | ) | |
| Jon & Laurie Warren, | ) | **COMPLAINT TO DENY DISCHARGE PURSUANT** |
| Debtor(s). | ) | **TO 11 U.S.C. §§ 727(a)(3), (4)(A) & (5)** |

The United States Trustee for Region 12, by and through the undersigned Assistant United States Trustee, in support of his Complaint to Deny Discharge, represents as follows:

*Jurisdiction*

1. The United States Trustee is an independent branch of the United States Department of Justice charged with the administration of bankruptcy estates pursuant to 28 U.S.C. § 581, *et. seq.*

2. The United States Trustee has standing to bring a complaint to deny the discharge of the debtor pursuant to 11 U.S.C. § 727(c)(1).

3. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and 1134 and 11 U.S.C. § 727(d).

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

*Factual Allegations*

5. This complaint is being brought in connection with case no. 09-02144, *Jon & Laurie Warren* (hereinafter "Defendants"), a chapter 7 case pending in the Southern District of Iowa, Davenport Division.

///

6. With their Petition, Defendants filed Schedules and a Statement of Financial Affairs. Those documents reveal the following information:

    A. On Schedule A, Defendants' listed real property in Washington, Utah valued at $464,900 and real property in Keokuk, Iowa valued at $300,000. (Both properties are scheduled as being over-encumbered.)

    B. On Schedule B, Defendants' listed personal property assets totaling $56,850 of which all but $6,000 represents the value of Defendants' three vehicles. (Vehicle values total $50,025.)

    C. On Schedules D and F, Defendants' listed total debts of $2,745,750. $1,117,196 in secured debts and $1,628,554 in unsecured debts. (Defendants did not list any priority unsecured debt.)

    D. On Schedule I, Defendants stated that as of the date of the filing, they were both "unemployed" with gross monthly income of $-0-. Defendants lack of stated income was in stark contrast to their alleged $4,794 in monthly expenses as listed on Schedule J.

    D. On Statement of Financial Affairs # 1, Defendants' listed their prior years incomes as $127,960 for 2007 and $103,421 for 2008. The source of the income listed in the Statement of Financial Affairs was described as "husband, self employment income."

*Rental Properties:*

7. On Statement of Financial Affairs # 10, Defendants' disclosed four properties transferred between 2006 and 2008. Those transfers were listed as:

    A. 1125 Leighton transferred in 2006 for $5,000;

    B. 1219 Orleans & 4045 Main Street transferred in 2007 for a total of $240,000; and,

    C. 22 / 24 North 5thStreet transferred in 2008 for an undisclosed sales price.

///

8. Contrary to Defendants' Statement of Financial Affairs a review of real property records reveal the following.

*Transferred Properties:*

    A. Defendants' transfer of 1423 Franklin Street, Keokuk, Iowa, in 2006 to Raelynn White.

    B. Defendants' transfer of 517 Des Moines Street, Keokuk, Iowa in 2006 to Aaron & Tara West.

    C. Defendants transfer of 513 Des Moines Street, Keokuk, Iowa in 2006 to Aaron & Tara West.

    D. Defendants' transfer of 609 Morgan Street, Keokuk, Iowa in 2006 to Kurt & Mokihana Jensen.

    E. Defendants' transfer of 6424 Orleans Street, Keokuk, Iowa in 2006 to Lance & Shelly Bertola.

*Owned Properties:*

    F. Defendants' ownership of property, not included on Schedule A, at 415 Franklin Street, Keokuk, Iowa.

    G. Defendants' ownership of property, not included on Schedule A, at 804 High Street, Keokuk, Iowa.

    H. Defendants' ownership of property, not included on Schedule A, at 1125 Leighton Street, Keokuk, Iowa.

    I. Defendants' purchase in 2006 of 1227 West Lexington Street, Washington, Iowa. (Defendants' are presumed to still own this property.)

*Rental Property Income*

9. According to tax returns provided by Defendants, in 2007 they had "rents received" (gross rental income) of $158,596 and net rental income of $110,385. In 2008 Defendants' had "rents received" (gross rental income) of $176,560 and net rental income of $95,715. In response to inquiry from the United States Trustee's office, Defendants' stated that their only properties were those that been disclosed in the Statement of Financial Affairs # 10. The amount of rental income received by Defendants in 2007 and 2008 is contradictory to Statement of Financial Affairs # 10, in which Defendants' indicate they had transferred their properties in 2006,

2007 & 2008 for what would be nominal sums in comparison to the amount of rent being received.

10. To clarify the discrepancies between the rental income reflected on Defendant's tax returns and the information from their Statement of Financial Affairs; the United States Trustee requested copies of the work papers used in preparation of Defendants' tax returns.

11. Defendants indicated they did not have any detailed records regarding their rentals, but that such information was available from their tax preparer. On Statement of Financial Affairs #19, Defendants' indicated that their books and records for the past two years had been maintained by "Elaine Ranking, EA, Bookkeeping and Tax Service, 1769 Daryl Porter Way, Oroville, California 95966." In response to the United States Trustee's request, Defendants' attorney contacted Ms. Rankin to obtain the work papers for the rental properties. In response, as provided by Defendants' attorney, Ms. Rankin stated:

> "Jon and Laurie did not give me the detail of their total rental income and deductions as shown on their [tax] Schedule E form for the tax years 2007 and 2008, they only provided me with the totals. You will need to get the break out by property location from them."

12. At their first meeting of creditors Defendants' testified that they had acquired properties to rehabilitate for potential resale. They testified that the later determined the properties could not be sold for the amount that was owed so they were returned to the bank. Defendants did not identify these properties. There is no information in Defendants' Schedules or Statement of Financial Affairs indicating the return of any property to a bank. Further, Defendants' testimony that the properties had no value is contradictory to the substantial rental income received from those properties in 2007 and 2008 as reflected on Defendants' tax returns.

*Business Entities:*

13. In the Statement of Financial Affairs # 18, under prior businesses within the past six years Defendants' listed **only** "Asbestos Science Technologies," P.O. Box 505, Bangor, California.

14. In response to the United States Trustee's request, Defendants indicated their financial problems were the result of their involvement in two business; (1) the disclosed, Asbestos Science Technologies (AST) and (2) Seib Enterprises, **not disclosed in the Statement of Financial Affairs**. As to those business, Defendants'

-4-

responded to the United States Trustee's request for information as follows:

*Asbestos Science Technologies:*

15. In the Statement of Financial Affairs # 18, Defendants listed Asbestos Science Technologies (AST) as a business operating in Bangor, California. A search for this entity in California indicates that AST of Bangor California was formed in 2001 as a "special trade contractor." The contractor's name associated with this business was Jon Warren.

16. Defendants' indicated that AST operated in 2007 and 2008. As to its 2008 operations, in a letter from his counsel dated June 11, 2009, Defendant Jon Warren is quoted as stating:

> "[AST] did operate in 2008. I do not know at this juncture what it did [financially]. After Sept. 3, 2008 I quit doing everything with AST which [means] it didn't operate in 2009. The only money that went into the AST account after Sept. 3rd, 2008 was money that was put in there from reimbursements that were used for the company on my American [Express]."

17. At their First Meeting of Creditors, Defendants' testified that they intend to solicit business for AST, but indicated it would be difficult "because the business is located in California."

18. Contrary to the information provided by Defendants in their Statement of Financial Affairs and the information provided in response to the United States Trustee's request, a search of public records reveals the following:

19. The list of asbestos contractors licensed with the California Air Pollution Control Program includes: Asbestos Science Technologies, **P.O. Box 1117, Linn Creek, Missouri, 65052 (319) 313-9001**. The CEO for the Missouri AST was **Jon Warren**.

20. The Secretary of State of Colorado lists articles of incorporation for Asbestos Science Technologies, LLC filed September 4, 2008, with an address in Denver. The names and address of the person forming the LLC are listed as **Jon N. Warren, 414 Orleans Ave., Keokuk, Ia 52632**, the same address listed as Defendants' homestead on the date of filing.

-5-

21. Neither AST of Missouri nor AST of Colorado are reflected in Defendants' Schedules or Statement of Financial Affairs.  Nor were the mentioned at the first meeting of creditors.

22. Despite request by the United States Trustee, Defendants have failed to provide any records related to transactions or losses associated with Asbestos Science Technologies.

*Seib Enterprises:*

23. Although Defendants' referenced Seib Enterprises (SE) at their first meeting of creditors as the source of their financial problem, the business is **not** referenced in the Statement of Financial Affairs.  In the June 11, 2009 letter from their attorney, in relation to Seib Enterprises Jon Warren is quoted as stating:

> "That business is currently out of business as First National Bank took over the business as they had a UCC filing against the [receivables] and inventory, which I didn't understand.  When they took over the business, they no longer allowed companies that owed money to Seib to pay us, but to pay the bank directly for debt that was incurred by the previous owners.  They had [their] personal house loans and a line of credit on the business which were associated with the bank and the ability for the bank to take over the business when the [receivables] were high enough to pay everything off."

24. The idea that Defendant, a seasoned business man already operating other corporations, would purchase a business without doing a UCC search or understanding the extent of the debt covered by an existing UCC, is not credible.  Further, a search of "Seib Enterprises" reflects that the business has not be taken over by the bank, but instead is currently operating as "Denver's Flooring Specialists" at 2209 South Jason Street, Denver, Colordao 80223.

25. A search of the Colorado Secretary of State reveals that SE is a Colorado corporation in good standing.  SE was formed in September of 1994.  As pertinent to this case, the Secretary of State filings reveal the following:

26. "Articles of Amendment" for SE, "e-filed" on October 8, 2008 giving Defendant Jon Warren sole control over the business.  The "amendment" includes a statement of "Unanimous Consent of the Board of Directors of Seib Enterprises, Inc" dated September 4, 2008.  The "director's statement" establishes the board of directors for Seib.  The directors are to be **Jon N.**

**Warren**, Donald E. Sanders and Robert W. Westwood. The "director's consent," is signed by **Jon N. Warren as both a director and president of the corporation.**

27. In addition to the "director's consent," the Articles included a "Unanimous Consent of the Shareholders of Seib Enterprises, Inc." The "shareholder consent" elected directors for the business to be **Jon N. Warren**, Donald E. Sanders and Robert W. Westwood. The "shareholder consent" dated September 4, 2008, is signed by **Jon N. Warren as sole shareholder of the corporation**.

28. "Articles of Amendment" for SE "e-filed" on March 13, 2009. The "amendment" reflects that effective February 25, 2009, only 70-days prior to Defendants' bankruptcy filing, **Jon N. Warren is removed as a officer and shareholder of the company**. The "amendment" further reflects that control and ownership of the company was returned to Jerald & Robert Seib.

29. Contrary to the information provided by Defendant, a letter dated March 4, 2009, from counsel for the Seib's reflects that Defendant consented to surrender his interest in SE to Jerald & Robert Seib. Nothing on the Secretary of State's site nor in the letter regarding transfer of the business reflects the business or its assets were taken by a bank.

30. Despite being the President, Director and sole shareholder of SE in late 2008 and early 2009, the business is not reflected in at Statement of Financial Affairs # 18.

31. Despite request by the United States Trustee, Defendants have failed to provide any records related to transactions or losses associated with Seib Enterprises.

*Defendants' Residences*

32. According to records of Lee County, Iowa, Defendants' acquired their homestead at 141 Orleans in Keokuk in October of 2003. On August 21, 2006, Defendants' took out a loan to purchase property at 1227 West Lexington Street, Washington, Utah. According to information provided by Defendants' counsel, Defendants resided in Utah from August 2006 through May 2007.

33. Although the value is scheduled at only $464,900, debt on the Utah residence at the time of filing was $780,000. Defendants did not sell or otherwise dispose of their property in Keokuk upon their relocation to Utah. Defendants' have provided no explanation as to the necessity for the relocation to Utah or why it was reasonable to purchase a $500,000 property for their nine-month stay.

34. All information obtained to date indicates Defendants' have or had business interests in Iowa, Missouri, California and Colorado. There is no information to establish any reason for Defendant relocation to Utah or as to why such a move would only have been for nine months.

35. The United States Trustee has been advised that since the filing of their case Defendants' have surrendered their residence in Keokuk and relocated to Tampa, Florida. No reason was provided for this most recent re-location or how Defendants, who were unemployed with income of $-0- on the date of filing, financed the move.

*Information from the First Meeting of Creditors*

36. At the first meeting of creditors Defendants' testified they had two timeshares in Mexico. Defendants did not disclose these properties in their Schedules or Statement of Financial Affairs.

37. At their first meeting of creditors questions were asked by a creditor, Brian W. Boyd. Mr. Boyd testified that he had loaned $60,000 to Defendants in the 90-days prior to filing. Mr. Boyd indicated he was personally familiar with Mr. Warren and that he had known him for several years. Mr. Boyd stated that he and Defendant Jon Warren were part of a three person group that had routinely loaned each other significant sums of money.

38. Defendants' Schedule F reflect a debt of $67,318.80 to Brian Boyd, c/o Big River Pawn, Inc., described as "*potential* personal liability a business related debt." The Schedules do not indicate the date on which the debt was incurred.

39. Mr. Boyd questioned Mr. Warren regarding "coins and diamonds" in his possession stating: "[Mr. Warren] had more coins and diamonds in his possession than Mr. Boyd had at his shop." There are no diamonds

-8-

or coins listed in Defendants' Schedules. The trustee terminated the examination without follow-up examination of these potential issues.

*Allegations re: 11 U.S.C. § 727(a)(3)*

40. Paragraphs 5 through 39 are incorporated herein as though set forth in full at this point.

41. 11 U.S.C. § 727(a)(3) provides:

(a) The court shall grant the debtor a discharge, unless –

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such failure to act was justified under all of the circumstances of the case;

42. A request for documents related to Defendants' rental properties was referred to their tax preparer who was alleged to have those records. The tax preparers response was that Defendants' had provided her with only the total numbers for the returns and <u>not</u> the underlying or supporting documentation. Defendants have not countered the tax prepares statements nor have they produced any records related to their 2007 and 2008 gross rental incomes of $158,596 and $176,560 respectively.

43. At their first meeting of creditors Defendants testified the AST was their primary business prior to the acquisition of SE in 2008. They testified the business provided asbestos examination and evaluation and that its primary clients had been the California school system. They testified that AST remained an active California corporation and that they were attempting to solicit new business for the company. Despite this testimony, Defendants have failed to provide, and instead indicated they do not have, records related to the operation of Asbestos Science Technologies.

44. At their first meeting of creditors Defendants testified that the failure of SE was responsible for their current financial problems. They further testified to using the proceeds of a $60,000 loan in support of the business in the 90-days prior to filing. Despite this testimony, Defendants did not list Seib in the Statement of Financial Affairs and have failed to provide, and instead indicated they do not have, records related to the operation of Seib Enterprises.

45. Defendants have concealed or failed to keep records related to their businesses and rental properties. Such records are essential for determining Defendants' financial condition or business activities. Said concealment or failure to keep records is sufficient to warrant denial of Defendants' discharge pursuant to 11 U.S.C. § 727(a)(3).

*Allegations re: 11 U.S.C. § 727(a)(4)(A)*

46. Paragraphs 5 through 39 are incorporated herein as though set forth in full at this point.

47. 11 U.S.C. § 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge, unless –

(4) the debtor knowingly and fraudulently, in or in connection with the case –

(A) made a false oath or account;

48. At their first meeting of creditors Defendants testified they owned two Mexican timeshares and gave the chapter 7 trustee significant details regarding the companies through which those timeshares were purchased and their attempts to sell their interest. Despite obvious knowledge of these properties, the timeshares were not reflected in Defendants' Schedules.

49. Defendants testified that the failure of Seib Enterprises was the primary reason for their financial problems. Records from the Colorado Secretary of State indicate that Defendants acquired 100% of the share of SE and that Jon Warren became President and a Director of SE in October of 2008. Records from the Colorado Secretary of State further indicate that Defendant surrendered his position and ownership of SE to the prior owners in March of 2009. Despite having been involved in the business immediately prior to their filing and the failure of the business being the basis of their financial problems, there is no mention of Seib Enterprises in Defendants' Schedules or Statement of Financial Affairs. (*See*, Defendants' Statement of Financial Affairs, # 18.) Even the reference to the $60,000 allegedly borrowed in the 90-days prior to the filing to pay business expenses was described in such a manner as to make no reference to SE. (The reference on Schedule F states the debt was "potential personal liability a business related debt" without any specific reference to the nature of name of the business.)

-10-

50. In response to Question 18 on their Statement of Financial Affairs Defendants list "Asbestos Science Technologies, whose address is a P.O. Box in Bangor, California. At their first meeting of creditors, Defendants testified that AST was a California business and that while were actively attempting to solicit new business for this company, it was difficult due to its California location. However, records from the Colorado Secretary of State show that articles of incorporation for Asbestos Science Technologies, LLC were filed September 4, 2008. The names and address of the person forming the LLC are listed as Jon N. Warren, 414 Orleans Ave., Keokuk, Ia 52632, the same address listed as Defendants' homestead on the date of filing. Despite having formed the new AST company approximately nine months prior to Defendants' chapter 7 filing, there is no reference to this entity in Defendants' Schedules or Statement of Financial Affairs. Nor did Defendants reference the Colorado AST company in their testimony at the first meeting of creditors. Nor to Defendants documents or testimony reference the Missouri company, Asbestos Science Technologies that is licensed in California to do asbestos removal and whose CEO is Jon N. Warren.

51. In response to Question 10 of the Statement of Financial Affairs, Defendants' indicated that between 2006 and 2008 they had transferred four parcels of real property. On Schedule A Defendants disclose the ownership of only two parcels of property, a house in Keokuk, Iowa and a house in Washington, Utah. Documents from the Lee County Recorder's Office indicate Defendants' ownership or transfer of a significant number of properties not reflected in their Schedules or Statement of Financial Affairs. At their first meeting of creditors Defendants' testified that their rental properties had debt in excess of their value and that any remaining rental properties were surrendered to the bank. However, according to their tax returns these "valueless" properties **had net rental income of** $110,385 in 2007 and $95,715 in 2008.

52. Defendants' signed their Petition, Schedules and Statement of Financial Affairs under penalty of perjury. They testified at their first meeting of creditors after having first been sworn. Despite having signed their bankruptcy documents and sworn to their accuracy at the first meeting; Defendants' failed to list Seib Enterprises, the newly incorporated Asbestos Science Technologies or the Missouri company. They further failed to list their

-11-

actual real estate holdings or transfers on Schedule A or the Statement of Financial Affairs. Defendants' actions constitute a false oath or account sufficient to warrant denial of Defendants' discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

*Allegations re: 11 U.S.C. § 727(a)(5)*

53. Paragraphs 5 through 39 are incorporated herein as though set forth in full at this point.

54. 11 U.S.C. § 727(a)(5) provides:

(a) The court shall grant the debtor a discharge, unless –

> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

55. Documents from the Lee County Recorder's Office indicate Defendants' ownership or transfer of a significant number of properties not reflected in their Schedules or Statement of Financial Affairs. At their first meeting of creditors Defendants' testified that the undisclosed rental properties had debt in excess of their value and were therefore surrendered to the bank. However, according to their tax returns these "valueless" properties **had net rental income of** $110,385 in 2007 and $95,715 in 2008. This net rental income represents 86% of Defendants total 2007 income and 92% of Defendants total 2008 income. Defendants have failed to explain the disposition of these income generating properties or justify why such properties would be "surrendered to the bank." Further, the records of real property from Lee County, Iowa, obtained after the date of filing, indicate Defendants' still own several undisclosed properties.

56. Defendants have failed to account for the disposition of the $60,000 loan received during the 90-days prior to filing that allegedly went expenses of Seib Enterprises. They have further failed to account for any assets of either Seib or Asbestos Science Technologies (of California, Missouri & Colorado). Defendants' testimony that the assets of Seib were taken by the bank based on a UCC security agreement which Defendant was unaware of when he acquired the company is not credible.

57. Questioning at the first meeting of creditors by an acquittance arguably familiar with their circumstances raises issues regarding Defendants' possession and failure to disclose diamonds and coins.

58. Defendants failed to account for how they were able to meet their monthly expenses with no income or how they acquired the funds to relocate to Tampa immediately after the filing.

59. The allegations set forth in paragraphs 55 - 59, above, indicate a failure of Defendants to explain a loss of assets that could have been used to meet their liabilities. Said alleged conduct is sufficient to warrant denial of Defendants' discharge pursuant to 11 U.S.C. § 727(a)(5).

WHEREFORE, the United States Trustee prays this court as follows:

1. For a judgment denying the discharge of Jon & Laurie Warren in chapter 7 case number 09-02114-lmj-7; and,

2. for such other and further relief as this court deems just and proper.

**HABBO FOKKENA**
United States Trustee
Region 12

By: /s/ James L. Snyder
**James L. Snyder**
Assistant U.S. Trustee
ID # IS9999967
210 Walnut Street, Room 793
Des Moines, Iowa 50309
Telephone (515) 284-4982
James.L.Snyder@usdoj.gov